# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01890-COA

GARRICK PRICE                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                    APPELLEE

DATE OF JUDGMENT:               12/18/2019
TRIAL JUDGE:                    HON. CAROL L. WHITE-RICHARD
COURT FROM WHICH APPEALED:      SUNFLOWER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         ASHLEY N. HARRIS
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY: ALLISON ELIZABETH HORNE
                                    ALEXANDRA RODU ROSENBLATT
DISTRICT ATTORNEY:              WILLIE DEWAYNE RICHARDSON
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 10/25/2022
MOTION FOR REHEARING FILED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Following a jury trial in the Sunflower County Circuit Court, Garrick Price was

convicted of first-degree murder, two counts of attempted first-degree murder, and

possession of a firearm by a felon. The circuit court sentenced Price to life imprisonment for

his first-degree murder conviction, two twenty-year terms for his attempted first-degree

murder convictions, and a five-year term for possession of a firearm by a felon, all to run

concurrently in the custody of the Mississippi Department of Corrections (MDOC). The

circuit court also sentenced Price to an additional ten years pursuant to the firearm-sentence-

enhancement statute, with that sentence set to run consecutively to the other sentences.[1]

¶2.    Price now appeals his convictions and sentences.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.    Around 10:13 p.m. on April 17, 2017, Aaron Beamon (Beamon), Svante Pernell (Pernell), Zachary Lee (Lee) and Melissa Ross (Melissa)[2] returned to Melissa's home on Galaxy Street in Indianola, Mississippi, after traveling from Memphis, Tennessee, where they had been shopping.  Upon arriving home, Melissa and Pernell exited Beamon's Chevrolet Tahoe to retrieve Melissa's shopping bags from the trunk.  Melissa and Pernell observed two men approaching them with guns.  The men opened fire on the vehicle.  Beamon attempted to drive away, but he was struck by a bullet and crashed the Tahoe into a tree.  As a result of the incident, Beamon was killed, Pernell suffered two gunshot wounds, and Lee suffered a broken neck.  During the investigation, Melissa and another witness Cecilia Gibson (Gibson) identified Price and Damien Ross (Ross) as the shooters.

¶4.    On May 8, 2019, both Price and Ross were indicted on one count of first-degree murder (enhanced by a firearm) in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2015) (Count I), two counts of attempted first-degree murder (enhanced by a firearm) in violation of Mississippi Code Annotated section 97-1-7 (Rev. 2014) (Count II and Count III), and one count of possession of firearm by a felon (enhanced by a firearm) in

_____

[1] Miss. Code Ann. § 97-37-37(2) (Rev. 2014) (applying enhancement to felons).

[2] We will refer to Melissa Ross as "Melissa" to avoid confusion with Damien Ross, one of the defendants.

2

violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014) (Count IV). Because Price has been convicted of two prior felonies, he was also indicted as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015).

¶5. On November 5, 2019, Ross filed a motion requesting severance and a separate trial, which the trial court denied. Ross's motion was not included in the record. However, on November 7, 2019, the State filed a response to Ross's motion and argued that because the anticipated evidence went to the guilt of both defendants, a severance in the matter was inappropriate. Price did not join in Ross's motion. The case against both men proceeded to trial in the Sunflower County Circuit Court on November 12, 2019. After the jury was selected, the court recessed for the day. The next day, two jurors informed the circuit court that when they saw victim Pernell in the hall, they realized they were familiar with him. After questioning these jurors, the court excused one for cause. The court then moved an alternate juror and designated the other juror to be an alternate. Both defendants objected, and Price moved for a mistrial. The court overruled the objection and denied the motion for a mistrial.

¶6. After opening statements, Ross renewed his motion for severance, but Price's counsel stated that he did not think that severance was necessary. The court took Ross's motion under advisement, and the trial proceeded.

¶7. At trial, Melissa testified that on the day of the shooting, Pernell called and told her

3

to get dressed because they were going to Memphis.[3]  Pernell, Beamon, and Lee picked up Melissa from her home.  According to Melissa, they returned to her home around 10:13 p.m. Melissa and Pernell exited the Tahoe to get Melissa's shopping bags.  As Melissa and Pernell were sorting through the bags, they noticed two young men walking down the street.  Melissa asked Pernell who the men were, and he responded that he did not know.

¶8.     According to Melissa, the men had hoods on, and as they came closer to the streetlight she heard one of the men say, "Don't run now, old [expletive]," and then the gunshots started.  Melissa stated that when the first set of shots started, she froze in the middle of the road.  Melissa testified that as the men were headed toward her, she looked Price in the eyes. When the second set of gunshots started, Melissa ran, fell to the sidewalk, and placed her hands over her head.  According to Melissa, Price fired the first set of gunshots, and Ross fired the second set.

¶9.     Melissa stated that while she was lying on the ground, she heard a boom.  When she lifted her head, Melissa saw that the Tahoe had hit a tree across the street from her home. Melissa stated Beamon "hopped out the truck holding his neck," and Pernell and Lee were limping.  Melissa stated that after they exited the vehicle, Beamon, Lee, and Pernell cut through a field and headed toward Grove Park.  On direct examination, Melissa identified both Price and Ross as the shooters.  She also testified that although it was dark on the night of the shooting, nothing prevented her from identifying Price.

---

[3] At the time, Melissa and Pernell were involved in a relationship with one another.

¶10.    However, on cross-examination by Ross's attorney, Melissa admitted that on the night of the shooting she only identified Price (a/k/a "Domino") as one of the shooters when speaking with Sergeant Caldwell with the Indianola Police Department at the scene. Sergeant Caldwell asked Melissa if anyone else had seen what happened. Melissa told Sergeant Caldwell that Cecelia Gibson (Gibson) was present when the shooting occurred. Melissa stated that after she identified Price, Gibson approached Sergeant Caldwell and identified Price and Ross as the shooters. According to Melissa, Gibson stated that the men had just come from her house. Melissa testified that she did not mention Ross's name as one of the shooters until after she heard Gibson identify Ross. Melissa further stated that she was not aware of any problems between Pernell, Beamon, Lee, and Price before the incident. Nor was she aware of any conflict Price and Ross may have had with her.

¶11.    Pernell testified that on the day of the shooting, he, Beamon, Lee, and Melissa went to Memphis in his Tahoe. When they made it back to Melissa's home, Beamon and Lee switched seats, and Beamon got into the driver's seat. As Beamon and Lee were switching seats, Pernell and Melissa were gathering Melissa's things out of the back of the truck. While gathering the bags, Melissa asked Pernell who was coming toward them from down the street. Pernell looked and saw two men running toward them, so he turned around and closed the hatch of the truck. According to Pernell, one of the shooters was wearing his hat to the front while the other wore his hat to the back. Pernell stated that it was pretty dark out that night and that he could not see the men's faces. Pernell also testified that he did not

5

know who the men were. As he turned around to face the men approaching, he realized that they were drawing guns. Pernell jumped into the backseat of the truck and told Beamon to go. Pernell stated that as Beamon was pulling off, both he and Beamon were shot, and Beamon lost control and ran the truck into a tree. Pernell testified that he was shot in the stomach first and then in the leg.

¶12. After the shooting stopped, Pernell crawled out of the truck and shook Beamon and Lee, who had lost consciousness. When Beamon and Lee regained consciousness, all three fled the scene and ran through a field to a "Mr. Walker's" home, where they waited for police to arrive. Pernell testified that after the shooting, he spoke with Investigator Johnnie Bland. Pernell told Investigator Bland that he could not identify who had shot him. Pernell stated that he knew of Price and had seen his face before but denied seeing Price on the night of the shooting. Pernell also stated that he did not remember hearing one of the shooters yell out "Don't you run now."

¶13. Gibson also testified at trial.[4] Gibson stated that on the day of the incident, she had walked down the street to a neighbor's home for cigarettes. As she waited outside for the cigarettes, she heard a voice say, "Don't run now." After she turned to see who had made

---

[4] Gibson was initially called as a State's witness. However, once she took the stand, Gibson provided an inconsistent statement, and the State sought to treat her as an adverse witness. In her initial statement to police, Gibson stated that she saw both Price and Ross shooting. However, at trial, she testified that she did not see the faces of the two men shooting. Sergeant Caldwell's body-camera footage showed Gibson identifying Price and Ross, and the footage was admitted into evidence at trial.

the statement, Gibson heard gunfire and saw two young men wearing hoodies with guns in their hands. After Gibson testified that she did not see the young men's faces, the State produced Sergeant Caldwell's body-camera footage in which Gibson stated, without hesitation, that she saw Damien Ross and "Domino" (Price) shooting. When questioned about her inconsistent statement, Gibson stated that she did not know why she identified Price and Ross because she had not, in fact, seen the shooters' faces. Gibson further stated that by the time she turned around, the shooting had already begun, and she ducked under a car. Sergeant Caldwell's body-camera footage was entered into evidence for the jury to consider.

¶14. Sergeant Caldwell testified that the initial dispatch indicated that shots were fired in the area of Galaxy Street, but a subsequent dispatch reported that the injured subjects were located on Jordan Drive. After checking on the victims on Jordan Drive, Sergeant Caldwell went to the scene on Galaxy Street. Sergeant Caldwell testified that when she arrived, she made contact with the potential witnesses who were standing around. She asked if everybody was okay and then inquired about what had happened and whether anyone had seen anything. Sergeant Caldwell recalled speaking with Melissa and Gibson. She also stated that she observed a dark vehicle that had hit a tree in the corner of the curb of the location. Photos of the Tahoe at the scene were admitted into evidence. Sergeant Caldwell stated that she and the other officers on the scene marked the bullet casings with white paper to aid the investigators.

7

¶15. The State called several other law enforcement witnesses to testify at trial. Patrol Officer Ozell Clay[5] and Officer Dominique Elzy testified to the location of the shell casings. Officer Clay testified that upon arriving on the scene, he put markings where he and other officers had located shell casings on the ground. Officer Elzy, who worked as a patrol officer, testified that on the night of the incident, he also placed white pieces of paper down to mark where shell casings had been found. Officer Elzy stated that his notes showed that the first shell casings he located were a little farther down from Melissa's home.

¶16. Investigator Standrick Hodges, who was employed with the Indianola Police Department as a criminal investigator, stated he went to Barnes Wrecker Service to process a vehicle that was involved in an incident the prior night. Hodges testified that he and another investigator took photos of the Tahoe and noted all the bullet strikes on the vehicle. These photos were admitted into evidence at trial.

¶17. Dr. Mark LeVaughn, the chief medical examiner for the State of Mississippi, was the last State witness to testify. Dr. LeVaughn stated that he performed a full autopsy on Beamon and concluded that his death was caused by a gunshot wound to the back and a bullet that had traveled to Beamon's neck. Dr. LeVaughn further concluded that the gunshot wound contained "no abrasion, soot, or stippling," which indicated that the shot came from a distance. According to Dr. LeVaughn, Beamon's cause of death was a gunshot wound to

---

[5] On the day of the incident, Officer Clay was employed with the Indianola Police Department, but on the day of the trial, he was employed with Washington County Sheriff's Department.

8

the back, and the manner of death was homicide.

¶18.    Before the State rested, the circuit court instructed the jury that Price had stipulated to having prior felony convictions. The court further instructed the jury that the stipulation was to be used for the sole and limited purpose of proving the prior-felony element for the conviction of felon in possession of a firearm as it related to Price.

¶19.    After the State rested, both defendants moved for a directed verdict.  Price argued that the State had failed to prove each and every element of the charges beyond a reasonable doubt.  The circuit court, in a bench ruling, denied Price's motion stating the following:

> Taking the evidence in the light most favorable to the nonmoving party, the [c]ourt finds that there has been testimony that was put on placing Defendant Garrick Price at the scene and identifying him as the shooter and that there is evidence by which a rational juror could determine that he was guilty of first-degree murder; second, attempted murder; third, attempted murder; and third, attempted murder . . . for all three counts, as well as the possession of a firearm by a convicted felon.

¶20.    Neither Ross nor Price testified at trial.  Ross rested without calling any witnesses. Price called only one witness, Officer Elzy, who further testified about the location of the recovered shell casings.

¶21.    At the end of the trial on November 15, 2019, the jury found both Price and Ross guilty of all four counts.  On December 17, 2019, the circuit court sua sponte entered an order granting Ross a new trial.

¶22.    On December 18, 2019, the circuit court sentenced Price to life imprisonment for Count I, two twenty-year terms for Counts II and III, and a five-year term for Count IV.  As

to the firearm enhancement, Price was sentenced to serve ten years in the custody of MDOC. The circuit court ordered that Counts I, II, III, and IV were to run concurrently, and the enhancement by firearm was to run consecutively to Counts I, II, III, and IV.[6]

*Price's motion for JNOV or, in the Alternative, for a New Trial*

¶23. On December 27, 2019, Price filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. Price's trial attorney also filed a notice of appeal with the circuit court on December 27, 2019. This notice was docketed by the Mississippi Supreme Court on December 30, 2019. On December 30, 2019, Price secured new counsel and filed a motion for additional time to prepare an amended motion for JNOV or, in the alternative, a new trial because he had obtained new counsel. On January 30, 2020, the circuit court granted the motion.

¶24. On March 4, 2020, Price filed an amended motion for JNOV or a new trial. In his motion, Price argued that (1) the guilty verdicts of the jury were against the overwhelming weight of the evidence, (2) the circuit court refused to allow Price's alibi witness to testify,[7] and (3) Juror No. 1, Kimyata Parker, was allowed to wear a t-shirt in court displaying the wording "Rest in Peace," symbolizing someone who had lost their life to gun violence. Claiming "prejudice and plain error," Price further contended that a new trial was warranted

---

[6] The court did not address or sentence Price as a habitual offender.

[7] The record reflects that during the trial, Price's former attorney, Tucker Gore, told the court that after speaking with Price, Price no longer wished to call his alibi witness, Liiaka Franklin.

because Circuit Court Clerk Carolyn Pernell-Hamilton was biologically related to Pernell and had significant interaction with the jurors during the trial.

¶25. On April 1, 2020, the circuit court entered an order denying Price's motion for a JNOV or a new trial.

*Price's Appeal*

¶26. The circuit court's order was filed with the supreme court on August 11, 2020, after which activity on the appeal commenced. On January 30, 2021, Price filed his brief, arguing, among other things, that plain error warranting a new trial existed and that Price was convicted by only eleven jurors. On March 2, 2021, the State filed a motion to supplement the record and suspend the briefing schedule pursuant to Mississippi Rule of Appellate Procedure 10(f).[8] The State acknowledged that the trial transcript reflected that only eleven jurors were polled at the end of the trial. The twelfth juror, Catasha Bailey (Bailey), was not polled. The State requested that this Court remand the case for an evidentiary hearing in the trial court to determine whether Price had been convicted by twelve jurors and to supplement the record with the hearing transcript.

---

[8] In its motion, the State argued that Rule 10(f) allows the record to be supplemented as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal. Rule 10(f) states:

> Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

11

¶27. The State attached to its motion an affidavit from Bailey in which Bailey attested that at the conclusion of the trial, she retired to the jury room with the other eleven jurors to deliberate, and she was present for the jury deliberations and verdict. Bailey also stated that she voted to find Price guilty of all charges.

¶28. On March 11, 2021, Price filed a response to the State's motion. In his response, Price argued that the State was attempting to impeach an invalid verdict in violation of Mississippi Rule of Evidence 606(b).[9] Price further argued that he was unduly prejudiced when he was convicted by eleven jurors and that therefore he was entitled to a new trial as a matter of law.

¶29. On March 21, 2021, this Court entered an en banc order granting the State's motion to suspend the briefing schedule and remanded the case to the circuit court. This Court ordered that within sixty days of the entry of the order, the circuit court was to conduct a hearing to determine whether Bailey was polled along with the other eleven jurors. The Court stated that if the current transcript was accurate (which failed to show that Bailey was polled), the circuit court was to then retrospectively poll Bailey to determine whether she

_____

[9] Mississippi Rule of Evidence 606(b)(1) states:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

12

agreed with the verdicts of the other eleven jurors.

*Evidentiary Hearing on Remand*

¶30.    On July 6, 2021, the remand hearing was held.  At the hearing, Bailey testified that although she had not been asked whether she agreed with the verdicts at trial when the other jurors had been polled, she stated that she did agree with the verdicts.

¶31.    The circuit court entered an order on the same day affirming the guilty verdicts rendered by the jury on November 19, 2019.  The court found that the transcript accurately reflected that the court did, in fact, fail to poll juror Bailey.  The circuit court held that Bailey was retrospectively polled and that she stated under oath that the verdicts were guilty as to Price on the charges of first-degree murder enhanced by a firearm, two counts of attempted first-degree murder enhanced by a firearm, and possession of a firearm by a convicted felon.[10]

¶32.    Price now appeals his conviction, arguing the following issues:

    I.     Whether the evidence was sufficient to convict him of first-degree murder, two counts of attempted murder, and possession of a firearm by a convicted felon, and whether the verdicts were contrary to the overwhelming weight of the evidence.

    II.    Whether it was error to deny the co-defendant's motion to sever and whether Price's counsel was ineffective for failing to seek severance after counsel for the co-defendant exculpated himself at Price's expense.

    III.    Whether the trial court erred in denying mistrial after Juror No. 4

---

[10] The record shows that Bailey was also not polled as to the verdicts for Ross.

13

admitted that her and her son had a relationship with victim Svante Pernell.

IV. Whether plain error warranting a new trial exists because Price was convicted by eleven jurors and whether the trial court cured that error when it conducted an evidentiary hearing to determine if the twelfth juror agreed with the verdicts of the other eleven jurors.

V. Whether it was reversible error to exclude testimony from Price's alibi witness.

VI. Whether Price should be granted a new trial because of prejudice and plain error.

VII. Whether it was reversible error for the court to grant the co-defendant a new trial sua sponte while denying Price's motion for JNOV?

VIII. Whether it was plain error warranting a new trial when Juror Catasha Bailey failed to answer honestly a material question on voir dire concerning her knowledge and preconceived bias of Price.

¶33. For purposes of clarity in our discussion, we have combined several of Price's assignments of error.

## DISCUSSION

### I.   Sufficiency and Weight of the Evidence

#### *A.   Sufficiency of the Evidence*

¶34. On appeal, Price argues that he was entitled to a JNOV because of the State's failure to prove its case beyond a reasonable doubt. Price asserts that there was insufficient evidence presented at trial to sustain his convictions, and therefore the circuit court erred by denying his motion for a JNOV. Price maintains that there is no physical evidence to support his guilty verdict; rather the "sole weight" supporting his conviction was Melissa's

14

identification of him as one of the shooters. Price argues that the circuit court committed reversible error by denying Price's motion for a JNOV but granting Ross a new trial sua sponte based on insufficient evidence.

¶35. "A JNOV motion challenges the legal sufficiency of the evidence." *Austin v. State*, 282 So. 3d 545, 554 (¶30) (Miss. Ct. App. 2019). When reviewing a trial court's ruling on the sufficiency of the evidence, this Court employs a de novo standard. *Body v. State*, 318 So. 3d 1104, 1108 (¶11) (Miss. 2021). This requires that "we determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Johnson v. State*, 235 So. 3d 1404, 1410 (¶12) (Miss. 2017)).

¶36. When reviewing a challenge to the sufficiency of the evidence, the Mississippi Supreme Court has reiterated that "the critical inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at (¶12) (internal quotation marks omitted). "This Court must accept all evidence supporting the guilty verdict as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Id*.

¶37. As noted by the State, Price takes issue with only one element of the crimes he was convicted of: the identification of Price as the perpetrator. The record reflects that at trial, Melissa testified that she could see both shooters and that she recognized Price as one of

15

them.  Melissa testified that even though the men were wearing hoods, she had a clear view of the shooters and even made eye contact with Price.  In a statement to police officers shortly after the shooting, Melissa named Price as one of the shooters.  In a subsequent statement to the police, Melissa again named Price as one of the shooters, and also again at trial.  We have held that "positive identification by one witness of the defendant as the perpetrator of the crime may be sufficient[.]" *Conner v. State*, 138 So. 3d 158, 163 (¶16) (Miss. Ct. App. 2013) (quoting *Passons v. State*, 239 Miss. 629, 634, 124 So. 2d 847, 848 (1960)).  Furthermore, "the absence of physical evidence does not negate a conviction where there is testimonial evidence." *Morris v. State*, 303 So. 3d 9, 16 (¶18) (Miss. Ct. App. 2020).

¶38.    In its order denying Price's motion for a JNOV, the circuit court acknowledged that "[Melissa's] eyewitness testimony was the only evidence connecting Price to the crime," but the circuit court found that Melissa's testimony as to her identification of Price "was certain and consistent."  The circuit court explained that on the night of the shooting, Ross gave two statements to the police, and in both statements, she identified Price as one of the shooters.   At trial, Melissa again identified Price as one of the shooters.  The circuit court accordingly held that "[w]hile reasonable and fair-minded jurors could have reached different results after hearing [Melissa's] testimony, her testimony was legally sufficient to satisfy the elements of the crimes and support the conviction."

¶39.    The record reflects that after the verdict, the circuit court sua sponte granted a new trial to Ross.  However, this order does not appear in the record before us.  Price asserts that

16

the circuit court granted Ross a new trial in part because Melissa's identification of Ross was not legally sufficient to support the verdicts against Ross. On appeal, Price maintains he was entitled to a JNOV for this same reason. However, the record reflects that the Melissa's identification of Price as one of the shooters was stronger and more definite than her identification of Ross. As stated, Melissa testified that she had a clear view of the shooters and even made eye contact with Price. A few minutes after the shooting, Melissa told police officers that Price was one of the shooters. Melissa admitted on cross-examination that she did not name Ross as the other shooter until after she heard Cecilia Gibson give his name to a police officer.

¶40. In viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence for a rational juror to have found beyond a reasonable doubt that Price committed first-degree murder, two counts of attempted murder, and possession of a firearm by a felon. We therefore find that the circuit court did not err in denying Price's motion for a JNOV.

### B. Weight of the Evidence

¶41. Price also claims that due to the lack of sufficient evidence to support his conviction, the verdicts are contrary to the overwhelming weight of the evidence.

¶42. This Court reviews the denial of a motion for a new trial for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). In so doing, we "weigh the evidence in the light most favorable to the verdict, 'only disturbing a verdict when it is so contrary to

17

the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id*. (quoting *Lindsey v. State*, 212 So. 3d 44, 45 (¶4) (Miss. 2017)).

¶43. As stated above, Melissa testified that she could see the shooters, and she recognized one of them as Price. Melissa also consistently named Price as one of the shooters when providing her statement to the police, as well as at trial. In *Little*, the supreme court clarified that when reviewing a motion for a new trial, this Court "do[es] not make independent resolutions of conflicting evidence[,] . . . [n]or do we reweigh the evidence or make witness-credibility determinations." *Id*. at (¶20). Rather, "when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Id*. (citing *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). "Unless testimony necessary to support the jury's verdict is so implausible or so substantially impeached as to be unworthy of belief, the jury's decisions in such matters is beyond the authority of a reviewing court to disturb." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000).

¶44. After viewing the evidence in the light most favorable to the verdicts, we find that the circuit court did not sanction an "unconscionable injustice" in ruling that Price's convictions must stand. We therefore find no abuse of discretion in the circuit court's denial of Price's motion for a new trial.

II. **Denial of Co-defendant's Motion to Sever**

¶45. Price next argues that the circuit court erred by denying Ross's motion to sever his trial from that of Price. As stated, Ross filed a pre-trial motion to sever, which the circuit court denied. After opening statements, Ross again renewed his motion to sever. The circuit court took Ross's motion under advisement, and the trial proceeded.

¶46. At no time before or during the trial did Price request to sever his trial from that of Ross or join in Ross's motion to sever. In fact, Price argued against the circuit court granting Ross's motion to sever. During the pre-trial hearing on the motion to sever, Price's counsel stated, "Mr. Price is opposed to a severance." During the bench conference on the renewed motion, Price's counsel argued,

> The State's going to say both [Ross and Price] were involved, and [Ross's trial counsel is] going to say . . . that all the evidence says Mr. Price, Domino. And that's what she's going by is that, supposedly, the overwhelming weight of the evidence is on Mr. Price and not on her client; so if that's not trying to shift the evidence . . . .

The circuit court informed Price's counsel that he "should have joined in the motion for the severance if that's what [he] believed." Price's counsel responded, "I don't think a severance is necessary, your Honor." When the circuit court asked if there was a conflict between the defense for Ross and Price, Price's counsel answered, "There is not, your Honor."

¶47. "A defendant cannot complain on appeal of alleged errors invited or induced by himself." *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018) (quoting *Galloway v. State*, 122 So. 3d 614, 645 (¶87) (Miss. 2013)). The supreme court has explained that the purpose of the invited-error rule is to "bind[] trial counsel to strategic decisions inducing

judicial rulings with the purpose of obtaining favorable judgments for their client[]" and "also defeats the disreputable strategy aimed at requesting a judge act in a particular way to salt the record with error as an end in itself, thereby providing potential grounds for reversal of an adverse judgment." *Id*. at (¶56).

¶48. Price expressly opposed Ross's motion to sever the trial; as a result, he cannot now complain that he was prejudiced by the circuit court's failure to grant Ross's motion to sever. Therefore, this issue is without merit.

### III. Ineffective Assistance of Counsel

¶49. Price argues that he received ineffective assistance of counsel. Specifically, Price asserts that his trial counsel was ineffective for failing to move to sever the trial and for his failure to call an alibi witness.

¶50. This Court has held that "generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. Ct. App. 2016). We may address ineffective-assistance-of-counsel claims on direct appeal where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id*. We also may resolve such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020).

20

¶51. In this case before us, we find that the record does not affirmatively show ineffectiveness of constitutional dimensions or lack of merit. Additionally, the parties did not stipulate that the record is adequate to address Price's claims. Accordingly, we are unable to adequately and properly address Price's ineffective-assistance-of-counsel claims on direct appeal. We therefore deny this issue without prejudice to provide Price the opportunity to pursue his claim in a post-conviction proceeding. *See Williams v. State*, 228 So. 3d 949, 952-53 (¶14) (Miss. Ct. App. 2017) ("[Appellant]'s ineffective-assistance-of-counsel claim is more appropriately brought during postconviction proceedings, and we therefore deny relief without prejudice as to [his] right to pursue this claim during postconviction proceedings.").

### IV. Judge's Recusal

¶52. Price claims, for the first time on appeal, that the circuit court judge had previously represented him when she was a public defender. The record shows that Price did not file a motion to recuse prior to or even at the beginning of the trial, and he failed to show any improper conduct by the judge. "This Court and the supreme court have indicated many times that a defendant can waive an objection to the trial judge if there is no motion to recuse or motion to continue filed or if the defendant never raises the issue at any other point during the trial." *Day v. State*, 285 So. 3d 171, 179 (¶19) (Miss. Ct. App. 2019) (citing *Banana v. State*, 635 So. 2d 851, 854 (Miss. 1994)). Accordingly, we find that this issue is waived.

¶53. We have held that when a defendant "fails to make a contemporaneous objection[,]

21

[he] must rely on plain error to raise the assignment on appeal." *Goff v. State*, 302 So. 3d 676, 680-81 (¶13) (Miss. Ct. App. 2020). "[W]hile this exception exists, it 'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* (citation omitted). In the present case, Price asserts that he was prejudiced by the circuit court judge presiding over his trial, and he seeks reversal under the plain error doctrine.

¶54. The supreme court has stated that a trial judge is presumed to be "qualified and unbiased." *Kinney v. S. Miss. Plan. & Dev. Dist. Inc.*, 202 So. 3d 187, 194 (¶20) (Miss. 2016). "For a party to overcome the presumption, the party must produce evidence of a reasonable doubt about the validity of the presumption." *Id.* "Reasonable doubt may be found when there is a question of whether a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality." *Id.* (internal quotation marks omitted).

¶55. In reviewing Price's claim for plain error, we find that Price has failed to produce any evidence that raises a reasonable doubt as to the circuit court judge's impartiality. Price bases his argument for recusal on his claim that the circuit court judge previously represented him. However, Price has not provided any evidence in support of this claim other than his own assertion. Additionally, the supreme court has held that "no language can be found in the Mississippi Constitution of 1890, Mississippi Code Annotated, Code of Judicial Conduct or URCCC requiring, or even suggesting, that a judge's prior representation of a party, absent

additional circumstances, is a basis for recusal." *Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 853 (¶27) (Miss. 2005).

¶56.    After our review, we find no error.

**V.    Jury Issues**

*A.    Failure to Grant a Mistrial*

¶57.    Price argues that the circuit court erred by failing to grant a mistrial after changing the jury composition.

¶58.    The transcript reflects that on the morning of the first full day of trial, Juror No. 3, Valerie Ratliff, informed the circuit court that based on her acquaintance with Pernell, she did not think that she could serve as an impartial juror. Ratliff stated that she saw Pernell on her way into the courthouse that morning, and he greeted her and called her by her nickname. She explained that although she did not know Pernell's name, she recognized him because he frequented the restaurant where she works. She informed the circuit court that no one witnessed her interaction with Pernell except for her niece, Tracy Turner, who was also on the jury as Juror No. 4. After questioning her, the circuit court excused Ratliff for cause and replaced her with an alternate juror. The circuit court then asked if anyone had an objection to Ratliff being excused; Price's counsel answered, "No objection from Mr. Price."

¶59.    Because Price did not object at trial to the circuit court's ruling regarding Ratliff, he is procedurally barred from raising it for the first time on appeal. *See Smith v. State*, 724 So. 2d 280, 313 (¶127) (Miss. 1998) ("A trial judge will not be found in error on a matter not

23

presented to him for decision.").

¶60. The circuit court then called in Turner and questioned her about her relationship with Pernell. She informed the court that she did not have any personal connections to Pernell but that she knew of him through her son who graduated with Pernell and sometimes partied with him. She explained that she did not know Pernell's name, so she did not even realize she knew Pernell until he called out to her aunt outside of the courthouse. Turner stated that she had not discussed this acquaintance with any other jurors. Both the circuit court and Ross's trial counsel questioned Turner about whether she could be fair and impartial, and she answered unequivocally stated that she could.

¶61. After she was questioned, Price's attorney argued to the court that had he known this information, he would have used a peremptory challenge to strike her. After considering the arguments of counsel, the circuit court held:

> Okay. I'm not going to strike her. I will seat her as an alternate. I'll move her down as an alternate because, as far as for cause, . . . she said that she can be fair and impartial. She does not have any contact with the person. She knows [him] peripherally, someone that she's known to hang with her son. It wouldn't have been something to be struck for cause anyway; so that would not have been – it would have been a peremptory strike. And so I'll seat her as an alternate.

¶62. Ultimately, the circuit court moved Turner to become an alternate and replaced her with an alternate, Catasha Bailey. Price's attorney objected, and he also moved for a mistrial "out of an abundance of caution," arguing that Ratliff and Turner had already "mingled" with the jury. Price attorney also argued that replacing them with alternate jurors completely

24

changed the original jury composition. The circuit court denied Price's motion for a mistrial.

¶63. We recognize that "[t]he dismissal of a juror for good cause and her replacement with an alternate is within the sound discretion of the trial judge." *Stevens v. State*, 513 So. 2d 603, 604 (Miss. 1987). Furthermore, a defendant who alleges a juror was dismissed in error and replaced by an alternate must "show actual prejudice resulting from the excusal and substitution." *Shaw v. State*, 540 So. 2d 26, 28 (Miss. 1989)). This Court has explained that even though a defendant "has the right to be tried by a fair and impartial jury, he does not have a vested right to any particular juror." *Horton v. State*, 726 So. 2d 238, 248 (¶41) (Miss. Ct. App. 1998).

¶64. After our review, we find that the circuit court did not abuse its discretion in denying Price's motion for a mistrial. The record shows that the circuit court, as well as Ross's defense counsel, questioned Turner about her relationship with Pernell and whether she could be impartial. Turner expressly stated that she could be fair and impartial. "[T]he trial judge is in the best position to determine whether the jury as selected was fair and impartial . . . ." *Archer v. State*, 986 So. 2d 951, 959 (¶30) (Miss. 2008).

¶65. Additionally, we find that Price has failed to "show actual prejudice." *Shaw*, 540 So. 2d at 28. In his appellate brief, Price argues that the circuit court should have granted a mistrial because Ratliff and Turner had already mingled with the jury. Price further asserted there "there was some loud discussion" between the court staff about the issue with these two jurors. The transcript reflects that when presenting arguments to the circuit court regarding

25

Ratliff and Turner, Ross's attorney informed the circuit court that she heard the bailiffs, clerks, and other court staff discussing that there was an issue with one of the jurors. Ross's attorney stated that all the jurors arrived at the courthouse at different times, and she was unsure whether the jurors picked up "bits and pieces" of the discussion as they entered. Price now argues that because the circuit court failed to explore this issue, "[i]t is impossible to know whether or not the jury was contaminated against Price." However, Price does not explain why the jury would be prejudiced against him due to a commotion or discussion in the hallway that did not even involve Price. Furthermore, Price failed to request that the circuit court ask the jurors whether they overheard a loud discussion between the court staff. Accordingly, this Court has no record or other basis on which to determine any potential prejudice. *See Ross v. State*, 954 So. 2d 968, 988 (¶33) (Miss. 2007).

### B.     Juror's T-shirt

¶66.    The transcript reflects that juror Kimyata Parker revealed during voir dire that she had a family member who had died from gun violence. On the last day of the trial, Parker wore a "Rest-in-Peace" shirt symbolizing the loss of a loved one. Price argues that the circuit court should have excused Parker or request that she change her clothing. However, Price failed to object or move for mistrial, and he therefore is procedurally barred from asserting this claim on appeal. *Galloway v. State*, 122 So. 3d 614, 679 (¶233) (Miss. 2013). Additionally, Price failed to cite any authority in support of his contention that the circuit court should have sua sponte excused Parker based on her attire. *See Corrothers v. State*,

26

148 So. 3d 278, 323 (¶130) (Miss. 2014) ("The failure to cite authority waives the issue for appellate review.").

### C. Circuit Court Clerk's Connection With The Jury

¶67. Price next argues that Circuit Court Clerk Carolyn Hamilton, the aunt of shooting victim Pernell, had significant interaction with the jurors during the trial so as to raise appearances of impropriety. However, Price does not provide any evidence to establish the truth of this allegation. Furthermore, Price failed to object to any interaction by the clerk with the jury, and he raises this issue for the first time on appeal. We accordingly find that this issue is procedurally barred. *See Corrothers*, 148 So. 3d at 315 (¶102).

### D. Juror Catasha Bailey

¶68. Price argues that he was prejudiced when juror Catasha Bailey failed to answer honestly a material question during voir dire concerning her knowledge and preconceived bias of Price. Price maintains that this prejudice amounted to plain error warranting a new trial.

¶69. During voir dire, the circuit court asked whether any of the jurors knew Price, and none of the jurors raised their cards. On appeal, Price asserts that Catasha Bailey's middle name was Gilson and that she is the niece of Willie Gilson. Price claims that Bailey withheld substantial information because she knew at the time of trial that Price had been indicted in another county for the unrelated alleged murder of Gilson. Price argues that when the court asked the jury venire if there was anything not asked that anyone believed the court needed

to know regarding the case, Bailey should have divulged the fact that her uncle was allegedly murdered by Price.

¶70.   The supreme court has held as follows:

> Following a jury's verdict, where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we must reverse on appeal. We presume prejudice. Where, as a matter of common experience, a full and correct response would have provided the basis for a peremptory challenge, not rising to the dignity of a challenge for cause, our courts have greater discretion, although a discretion that should always be exercised against the backdrop of our duty to secure to each party trial before a fair and impartial jury.

*Myers v. State*, 565 So. 2d 554, 558 (Miss. 1990).

¶71.   Here, Price has not provided any evidence to show that Bailey was actually related to Gilson. Price simply asserts that it is an "acknowledged fact" that Bailey is Gilson's niece. Price also has failed to provide any information to show that Bailey knew that Price had been indicted for her uncle's alleged murder. Price therefore has not provided any evidence to "show[] that [Bailey] withheld substantial information or misrepresented facts." *Id*.

¶72.   At the evidentiary hearing ordered by this Court on remand, Price's appellate counsel stated that she wanted to question Bailey about her relationship to Gilson. The circuit court judge asked if Price raised this claim during voir dire. Counsel replied, "I'm behind the eight ball on this, but according to [Price], he raised that issue with his trial counsel. . . . [A]ccording to my client, he raised that with trial counsel." The transcript reflects that Price's trial counsel did not strike Bailey for cause during voir dire, and this issue was raised

28

for the first time on appeal.[11]

¶73.    The supreme court has stated that it will "decline[] to employ plain error review on appeal when reviewing a scenario in which the defendant failed to object to the seating of a juror during voir dire when the basis for the objection was then known." *Small v. State*, 303 So. 3d 704, 713 (¶39) (Miss. 2020) (quoting *Ambrose v. State*, 254 So. 3d 77, 112 (¶104) (Miss. 2018). The supreme court explained "that the failure to object at the time the jury is empaneled operates as a conclusive waiver if the basis of the objection is known or might have been known or discovered through the exercise of reasonable diligence." *Id*. (internal quotation marks omitted).

¶74.    For the reasons set forth above, we find that Price's claim is procedurally barred and without merit.  However, because Price's appellate counsel alleged that Price informed his trial counsel about his issues with Bailey, we deny this issue without prejudice to allow Price the option to pursue his claim in a post-conviction proceeding. *See Williams*, 228 So. 3d at 952-53 (¶14).

### VI.    Eleven Jurors

¶75.    Finally, Price argues his constitutional rights were violated when he was convicted by only eleven jurors, and therefore he is entitled to a new trial.

---

[11] Bailey was originally seated as an alternate juror, and she was placed on the jury when Juror Turner was moved to an alternate juror.  As discussed above, Price's trial counsel objected to the circuit court changing the jury composition, but he did not object due to any specific issue with Bailey.

¶76. Rule 18.1 of the Mississippi Rules of Criminal Procedure states that "[i]n felony cases, conviction requires the unanimous consent of twelve (12) impartial jurors." We recognize that "[t]he constitutional right to trial by jury includes as its essential elements that the jury shall consist of twelve impartial men, neither more nor less, and that the verdict shall be unanimous." *James v. State*, 912 So. 2d 940, 951 (¶20) (Miss. 2005). Price contends that only eleven jurors were polled, and our review of the record confirms this fact. We further acknowledge that only eleven jurors were polled when the circuit court separately polled the jury for their votes on Ross's verdicts as well.

¶77. After receiving Price's initial appellate brief where he raised the issue that he was only tried by eleven jurors, the State filed a motion requesting an evidentiary hearing regarding this issue. The State attached to its motion an affidavit from Bailey, the juror who was not polled. In her affidavit, Bailey stated that at the conclusion of the trial, she retired to the jury room with the other eleven jurors to deliberate, and she was present for the jury deliberations and verdict. She also stated that she voted to find Price guilty of all charges.

¶78. This Court stayed the briefing and entered an order remanding the case to the trial court with instructions for the trial court to "conduct a hearing to determine whether the current transcript accurately shows that Catasha Bailey was not polled along with the other eleven jurors." This Court ordered that "[i]f the current transcript is accurate, the circuit court shall then retrospectively poll Bailey to determine whether she agreed with the verdicts of the other eleven jurors."

¶79. At the evidentiary hearing on remand, the circuit court asked Bailey if she was brought into the courtroom when the jurors were polled. Bailey confirmed that she was brought into the courtroom. When the circuit court asked Bailey if she was polled with the rest of the jury, she answered that she was not polled by the circuit court. The circuit court then questioned Bailey about whether she agreed with the verdicts and how she voted. Bailey stated that she agreed with the verdicts and that she voted to find Price guilty.

¶80. The transcript reflects that Price's attorney intended to question Bailey further regarding her actual presence during the jury deliberations and verdict. The State objected to this line of questioning and asserted that the limited scope of this Court's remand order did not allow such questioning. The circuit court agreed and did not allow Price's counsel to further question Bailey about her actual presence during the deliberations and verdict. Price's counsel objected to not being able to further question Bailey, stating, "We would have been able to prove that or at least call a witness or two to contest what she said. She was not present when the jury was polled." When the circuit court asked Price's counsel what witness was going to testify as to that information, Price's counsel responded that she was going to call Price to testify just for that limited purpose.

¶81. On July 6, 2021, the circuit court entered an order confirming that held an evidentiary hearing to determine whether Bailey was polled with the other eleven jurors. The circuit court found that "[it] did, in fact, fail to poll Juror Bailey. Juror Bailey was retrospectively polled and stated under oath that her verdict was [g]uilty" as to Price on all charges. The

31

circuit court accordingly affirmed the guilty verdicts rendered by the jury on November 15, 2019.

¶82. Price acknowledges that the circuit court conducted an evidentiary hearing regarding whether Bailey was polled by the circuit court after the verdicts and whether she agreed with the guilty verdict, but Price submits that the circuit court failed to inquire into Bailey's whereabouts or ask why she was absent during such critical stages of the trial. Price submits that the circuit court's failure to inquire into such matters prejudiced him.

¶83. The supreme court has held that in criminal cases, "the constitutional right to trial by 12 men must be secured to every defendant, and a verdict by 6 men, or by 11 men, is absolutely void, and judgment founded in such nullity must necessarily be itself a nullity." *Ex parte Scott*, 70 Miss. 247, 247, 11 So. 657, 657 (1892). The trial transcript shows that the verdicts in this case were entered and recorded before all twelve jurors were polled. However, we find that this error was cured on remand during the evidentiary hearing. At the hearing, Bailey testified that she was in the courtroom when the jurors were polled, but she stated that she was not polled. The circuit court then polled Bailey and asked if she agreed with the verdicts of the other eleven jurors. She confirmed that she did agree, and she testified that she voted to find Price guilty of all charges.

¶84. The dissent argues that the subsequent polling of a juror cannot cure the prejudicial

effect of the trial court's initial non-polling of that juror. *Post* at ¶¶100, 105.[12] In *Martin v.*

*State*, 732 So. 2d 847, 854-55 (¶30) (Miss. 1998), the supreme court held that a trial court has

the authority to determine whether a clerical error has occurred when the jury verdict was

rendered, as well as the authority to correct any such error. *See also Johnson v. St.*

*Dominics-Jackson Mem'l Hosp.*, 967 So. 2d 20, 25 (¶¶17-18) (Miss. 2007). Pursuant to Rule

10(e) of the Mississippi Rules of Appellate Procedure,

> [i]f anything material to either party is omitted from the record by error or accident or is misstated in the record, the parties by stipulation, or the trial court, either before or after the record is transmitted[,] . . . or either appellate court on proper motion or of its own initiative, may order that the omission or misstatement be corrected, and, if necessary, that a supplemental record be filed.

Additionally, Rule 10(f) states that "[n]othing in [Rule 10] shall be construed as empowering

the parties or any court to add to or subtract from the record except insofar as may be

necessary to convey a fair, accurate, and complete account of what transpired in the trial

court with respect to those issues that are the bases of appeal." Accordingly, this Court and

the circuit court are authorized to add to the record "to convey a fair, accurate, and complete

---

[12] We agree with the dissent that there is no Mississippi case directly on point. The dissent cites an Oregon case, *State v. Vann*, 973 P.2d 354 (Or. Ct. App. 1999), where the trial court re-called a juror after the verdict was entered and the jury was dispersed. The Oregon Court of Appeals found that the trial court abused its discretion in re-calling the juror in an attempt to correct the verdict. *Id*. at 357. The court explained that "[o]nce a verdict has been received, and the jury dispersed, the court is foreclosed from any action regarding the verdict, except mistrial or some other post-trial motion." *Id*. at 358. In the case before us, the circuit court did not re-call Bailey. Instead, this Court ordered the circuit court to hold an evidentiary hearing on remand to determine whether the current transcript accurately shows that Bailey was not polled along with the other eleven jurors.

account" of the events that occurred during Price's trial.

¶85.    Mississippi Rule of Appellate Procedure 14(b) provides, "In the event that . . . the Court of Appeals so directs, the trial court may determine all issues of fact which may arise out of any appeal submitted to the trial court for a determination, and which may be necessary for the disposition of cases on appeal." A review of our jurisprudence shows that Mississippi appellate courts often find it necessary to remand aspects of a case that are potentially outcome determinative. *See Gary v. State*, 237 So. 3d 100, 103 (¶17) (Miss. 2016) (suppression hearing); *One 1970 Mercury Cougar v. Tunica County*, 115 So. 3d 792, 797 (¶25) (Miss. 2013) (speedy-trial hearing); *Horne v. State*, 819 So. 2d 1186, 1188 (¶¶6-7) (Miss. 2001) (*Batson* hearing); *Barnett v. State*, 497 So. 2d 443, 444 (Miss. 1986) (holding hearing to determine whether appellant is entitled to out-of-time appeal); *Coleman v. State*, 483 So. 2d 680, 684 (Miss. 1986) (holding hearing to determine whether guilty plea was involuntary due to counsel's incorrect advice); *Ferguson v. State*, 298 So. 3d 1030, 1032 (¶4) (Miss. Ct. App. 2019) (holding hearing on appellant's second motion for a new trial); *Silvia v. State*, 175 So. 3d 533, 536 (¶13) (Miss. Ct. App. 2015) (retrospective competency hearing).

¶86.    Regarding the scope of the evidentiary hearing, Mississippi Rule of Evidence 606(b) states:

> During an inquiry into the validity of a verdict[,] . . . a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . . . The court may not

receive a juror's affidavit or evidence of a juror's statement on these matters.

In the order directing the circuit court to hold an evidentiary hearing, this Court limited the scope of the evidentiary hearing to a determination of whether the transcript accurately shows that Bailey was not polled and if so, if Bailey agreed to find Price guilty of the charges that he faced. During the hearing, the circuit court properly denied any line of questioning prohibited by Rule 606(b).[13]

¶87. In *Martin*, the supreme court stated:

> The majority of the United States Courts of Appeal recognize that [Federal Rule of Evidence] 606(b) does not prohibit testimony or affidavits of jurors, stating that the verdict reached was not their true verdict, but was instead a mistake due to the recording of the verdict, transmission of the verdict, or a clerical error.

*Martin*, 732 So. 2d at 851 (¶20). We find that the opposite must also be true—that a juror may testify that the verdict reached was her true verdict. *See Robles v. Exxon Corp.*, 862 F.2d 1201, 1207 (5th Cir. 1989) ("[R]ule 606(b) does not bar juror testimony as to whether

---

[13] The dissent argues that Price should be allowed to question Bailey regarding the following: her presence during the jury deliberation and verdicts as well as her ex-parte communication with the State that resulted in the affidavit. *Id*. at (¶27). The record shows that in Price's initial appellate brief, he alleged that Bailey "left the courthouse" during jury deliberation "and did not return to the courtroom." In response, the State move for a limited remand and submitted Bailey's affidavit stating that she was present during jury deliberation and that she voted to convict Price on all charges. In this Court's order directing the circuit court to conduct an evidentiary hearing on this issue, this Court limited the scope of the hearing in accordance with Rule 606(b).

On appeal, Price has submitted no evidence or affidavit in support of his claim that Bailey was not present for the jury's deliberation or verdict. Price has also not filed any motions requesting an additional evidentiary hearing.

the verdict delivered in open court was actually that agreed upon by the jury.").[14]

---

[14] The dissent takes issue with the State securing an affidavit from Bailey in which Bailey stated that she was present during the jury deliberations and that she voted to find Price guilty of all charges. *Post* at n.21 & ¶¶119, 124. The dissent asserts that "this constituted prohibited communication with a juror" and suggests that the State needed "permission or supervision from the circuit court" prior to obtaining the affidavit. *Id*.

*Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407 (Miss. 1993), and *Batiste v. State*, 337 So. 3d 1013 (Miss. 2022), the cases cited by the dissent, addressed juror affidavits and communications that were "in conflict with the explicit language of M.R.E. 606(b)." *Gladney*, 625 So. 2d at 414. However, the specific facts before us are *not* the type of communication or juror inquiry prohibited by Mississippi Rule of Evidence 606(b). In Price's appellate brief, he raised the issue that he was only tried by eleven jurors. In response, the State filed a motion for the purpose of requesting that this Court remand the case for an evidentiary hearing in the trial court on the issue. The State attached Bailey's affidavit to its motion, in which Bailey stated that she was present for the jury deliberations and verdicts and that she voted to find Price guilty of all charges. As stated above, the supreme court has held that "[Rule] 606(b) does not prohibit testimony or affidavits of jurors, stating that the verdict reached was not their true verdict, but was instead a mistake due to the recording of the verdict, transmission of the verdict, or a clerical error." *Martin*, 732 So. 2d at 851 (¶20). We found that the opposite must also be true: a juror may testify that the verdict reached was her true verdict. *See Robles*, 862 F.2d at 1207 ("[R]ule 606(b) does not bar juror testimony as to whether the verdict delivered in open court was actually that agreed upon by the jury."). Therefore, the State did not engage in improper or prohibited ex parte communication when it obtained Bailey's affidavit for the limited purpose of Bailey stating that she was present for the deliberations and verdicts and voted to find Price guilty.

In *Gladney*, the supreme court "established a procedure for trial courts to utilize when allegations of juror misconduct or extraneous information improperly brought to the jury's attention are made." *Batiste*, 337 So. 3d at 1024 (¶29). Because Rule 606(b) does not bar Bailey from testifying that she voted to find Price guilty, the State did not need permission or supervision from the circuit court prior to obtaining Bailey's affidavit. As stated, the State obtained Bailey's affidavit in support of its motion requesting that this Court remand the case for an evidentiary hearing to determine whether Price had been convicted by twelve jurors and to supplement the record with the hearing transcript.

Furthermore, we find that Price has failed to show that he was prejudiced by the State securing Bailey's affidavit in response to Price's claim that she was not present during a portion of the deliberation or verdict, or by the circuit court's denial of Price's request to question Bailey regarding her communication with the State that led to the affidavit.

¶88.    Upon reviewing the record, we find that the error in polling after the verdicts was a simple mistake by the circuit court judge.  The record shows that twelve jurors and two alternate jurors were originally selected for Price's trial.  Steven Stricklen was alternate 1, and Bailey was alternate 2.  After Juror No. 3 (Ratliff) was stricken from the jury, Alternate 1 (Stricklen) became a juror.  Juror No. 4 (Turner) was eventually moved to the position of Alternate 1, and Bailey was moved up to a juror, resulting in twelve jurors and one alternate.  After reviewing the transcript, it appears that when the alternates were seated as jury members at the beginning of the trial, the circuit court judge did not correct her jury sheet.[15]  Accordingly, we find that the circuit court judge mistakenly forgot to call Bailey, who was originally seated as an alternate but actually served on the jury.

¶89.    As to Price's assertion that Bailey was not present during portions of the trial,

---

[15] Ross and Price were tried together.  After the verdicts were read, the circuit court first polled the jury regarding Ross's verdicts and then immediately polled the jury regarding Price's verdicts.  While polling the jury on Ross's verdicts, the circuit court judge mistakenly called both Juror No. 3 (Ratliff) and Juror No. 4 (Turner):

> THE COURT:     Juror No. 3, Valerie Ratliff?  Where are you?
>
> THE CLERK:     She left.
>
> THE COURT:     Oh, I'm sorry.   Juror No. 4, Tracy—Juror No. 5, Raynette Wells, is that your verdict?
>
> JUROR NO. 5:   Yes, ma'am. Yes, ma'am.
>     . . . .

The transcript also reflects that when the circuit court judge polled Stricklen, he was still listed as "Alternate Juror No. 1."

37

deliberations, or verdict, we find that Price has not submitted any evidence or affidavits, other than his own assertions, to support his claim. Price also has not filed any motions requesting an additional evidentiary hearing. As stated, Price's attorney informed the circuit court that she intended to call "a witness or two" to contest Bailey's testimony that she was present during the jury verdicts and polling, but upon questioning by the circuit court, Price's attorney admitted that she only intended to call Price to testify.

¶90. After our review, we find that any error incurred when only eleven jurors were polled after the verdicts was cured upon remand at the evidentiary hearing. The circuit court established at the hearing that Price was in fact convicted by twelve jurors. Upon polling, Bailey testified that she agreed with the verdicts and that she voted to find Price guilty of all charges. Price has failed to show that he suffered any prejudice, and we accordingly find no error.

## CONCLUSION

¶91. We affirm Price's convictions and sentences.

¶92. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; McCARTY, J., JOINS IN PARTS I AND II.**

**McDONALD, J., DISSENTING:**

¶93. I disagree with the majority's finding that any error that occurred when only eleven jurors were polled after the verdicts was cured upon remand at the supplemental hearing. I

38

respectfully dissent for three reasons. First, on the record as it stood when Price appealed, the judgment of conviction was null and void because there are no valid verdicts without the agreement of all twelve jurors. Second, Price's due process rights were violated because (A) the record reflects that only eleven persons voted to convict, (B) he was deprived of his right to question Catasha Bailey at the supplemental hearing, and (C) he was prevented from presenting evidence during the supplemental hearing that this Court ordered. Third, Bailey's post-trial polling was tainted by the State's prohibited contact and communication before the court received Bailey's vote on the verdicts. Accordingly, I would reverse Price's conviction and remand for a new trial.

**Facts Pertinent to this Dissent**

¶94.    A review of the record clearly shows that the circuit court only polled eleven jurors, not once but twice—first when the jury was polled about its verdicts on Ross, Price's co-defendant, and then a second time when the jury was polled about the verdicts they reached for Price. Both times, the record reflects that only eleven jurors were polled and responded. Immediately after that polling, the court directed that the verdicts be entered into the clerk's files.

¶95.    On appeal, Price is not represented by the same attorney that he had at trial. When reviewing the record, Price's appellate counsel discovered that the verdicts were entered with the agreement of only eleven jurors and raised the validity of the verdicts as an issue in Price's initial appellate brief. Instead of responding, the State filed a motion with this Court

39

requesting that the briefing schedule be suspended and that the case be remanded under Mississippi Rule of Appellate Procedure 10 for a supplemental hearing to determine if Bailey had been polled with the other eleven jurors and if not, to poll her to determine if she agreed with the verdicts. The State attached an affidavit that it had secured from the missing juror, in which she stated she was present during the trial and deliberations, and that although she was not polled, she agreed with the verdicts on all counts. The juror signed the affidavit as "Catasha G. Bailey." Price filed a response in opposition to the State's motion.

¶96.    After considering the motion and response, this Court entered an en banc order granting the State's motion to suspend the briefing schedule and remanded the case, ordering the circuit court to conduct a hearing to determine if Bailey had been polled, and if not, whether she agreed with the verdicts.

¶97.    Price's new attorney represented him at the supplemental hearing that the circuit court convened in response to this Court's order. During the hearing, the court questioned Bailey who said in response that she was present during the polling but that she had not been polled. The court asked her if she agreed with the verdicts on each of the charges, and Bailey stated that she did. The court then asked if the attorneys had any questions for Bailey, but the State immediately objected arguing that the en banc order was limited and it was improper to question a juror about their verdict. The exchange went as follows:

> The Court:        Did either side have any questions of Ms. Bailey regarding her verdict? Because the Court inadvertently failed to poll her, we're polling her now as to her verdict.

40

| | |
|---|---|
| State: | Your Honor, we're going to object to any questions being asked of her because we don't ask questions to normal jurors when they are being polled. |
| | That's outside the scope of the order. Judge Wilson's order is extremely limited as to what should be happening. |
| The Court: | Okay. |
| Harris (Price): | Your Honor, we do have questions. The order says to first determine if she was polled and if she agreed and, then, if she had not, then to poll her. So we do have some questions regarding her presence or absence during that process. We understand what she's just testified to, but for the record, we would like to explore that a little bit more. |
| . . . . | |
| Harris (Price): | And, Judge, if Mr. Price is not allowed to question this witness, he's going to be severely prejudiced. There's – |
| The Court: | How? |
| Harris (Price): | – no way in our opinion to rectify what happened. You know, this is so one-sided if he can't be heard and question [Bailey] regarding her vote or nonvote. |
| The Court: | Well, you don't – |
| Harris (Price): | Also – |
| The Court: | – you don't get to question the juror about her vote, but you're saying regarding her presence? |
| Harris (Price): | Correct, your Honor. |

However, the circuit court would not allow Price to question Bailey at all, not even regarding

whether she was present during deliberations and polling.[16] The circuit court indicated that our order was limited to two simple issues: (1) whether Bailey had been polled, and (2) whether she agreed with the verdicts as rendered. Price was not allowed to question Bailey or present any other evidence. Price's counsel made a proffer that she had "a witness or two" who could testify that Bailey had left the courthouse and did not return, even for deliberations. Counsel also informed the court that she had just recently learned of Bailey's connection with the murder victim in another case pending against Price, that of the murder of Willie Gilson.[17] It was believed that Bailey was Gilson's niece.

## I. The eleven-person verdicts were null and void.

¶98. Because the original record reflects that at the conclusion of the trial only eleven jurors agreed on Price's verdicts, the verdicts that were entered were not full and complete verdicts by twelve jurors. The Mississippi Supreme Court held in *Ex parte Scott*, 70 Miss. 247, 11 So. 657 (1892) that such a verdict is void. In that case, Scott filed a petition for writ of habeas corpus arguing that the criminal judgment against him was a nullity because it was founded on a verdict of eleven men. *Id*. The sheriff responded that the clerk of the court had omitted the name of one juror when he entered the names of the selected jurors. *Id*. At the

---

[16] At the hearing, Price's counsel stated that she wished to question Bailey regarding whether or not she had been "absent during the polling of the jury as well as [whether] she was missing for a large portion of the trial." According to Price's attorney, there was proof that Bailey left the courthouse when the jury retired for deliberations.

[17] On appeal, Price alleges that Catasha "G." Bailey was Catasha "Gilson" Bailey, the niece of Price's alleged victim, Willie Gilson, in another case.

circuit court's hearing on Scott's petition, the criminal court record was entered and showed that "a jury of 11 men, whose names are set out in the record, tried the issue and returned a verdict against the defendant." *Id*. The State called the clerk of the court who testified that the jury was composed of twelve men but that the name of one was omitted from the record by a clerical error. *Id*. On appeal, the Mississippi Supreme Court stated that normally errors behind a judgment are not considered in a habeas corpus proceeding and that a mere reversible error should be taken up in a direct appeal. *Id*. However, the supreme court stated that in Scott's case:

> The error complained of is incurable by any supplementary oral proof. It is not an irregularity merely. It is an omission of a fact from the record which presumption may be invoked to supply. It is a fatal defect, affecting the jurisdiction of the court. *The constitutional right to trial by 12 men must be secured to every defendant, and a verdict by 6 men, or by 11 men, is absolutely void, and judgment founded in such nullity must necessarily be itself a nullity.*

*Id.* (emphasis added). The supreme court held that the circuit court that tried Scott had "no power to pronounce judgment because there was no verdict of guilt on which to base it." *Id.* The verdict was a nullity as was the judgment and Scott stood "as if he had not been tried at all." *Id*. The supreme court reversed the dismissal of the petition for writ of habeas corpus, but did not discharge Scott, but ordered that he be retried. *Id*.

¶99. If the clerk's testimony of his failure to record the name of the twelfth juror was insufficient to cure the flaw in the *Scott* verdict, then the post-verdict polling of a missing juror months after trial is even more insufficient to cure Price's verdicts in this case. In *McLarty v. State*, 842 So. 2d 590 (Miss. Ct. App. 2003), we underscored the reason for

43

polling a jury immediately after a verdict is rendered, and before the verdict is recorded, stating:

> We have recognized that the purpose of polling a jury is to give each juror an opportunity, *before the verdict is recorded*, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.

*Id*. at 592 (¶8) (emphasis added).

¶100.  Although there is no Mississippi case addressing the issue of whether the subsequent polling of a juror can cure the prejudicial effect of the initial non-polling, another jurisdiction has.  In *State v. Vann*, 973 P.2d 354 (Or. Ct. App. 1999), the Oregon Court of Appeals reversed and remanded the convictions of three co-defendants (Vann, Lewis, and Smith) after finding that the trial court erred in denying the defendants' request for mistrial due to a polling error.[18]  In that case, after the jury returned its verdicts, the court asked the jury if its verdicts were unanimous.  *Id*. at 355.  The foreman replied "not all of them."  *Id*.  Defendant Smith then requested that the jury be polled, which was done in writing.  *Id*.  Each juror wrote their verdict on a piece of paper from their juror notebook, and the court collected the

---

[18] The trial court stated that the irregularity in the verdicts did not affect co-defendant Clark's case because his case was unanimous.  Eleven jurors voted to acquit Clark on the first count and voted to convict him on the second count.  Therefore, the trial court found that his verdict was "not a problem."  Under Oregon law, only 10 of twelve jurors needed to agree to render a lawful verdict.  "In a felony criminal action in which there are 12 jurors seated, at least 10 jurors must concur to render a legally sufficient verdict of guilty or not guilty."  *Vann*, 973 P. 2d at 357.

polling slips and asked, "Do I have everybody's slip?" *Id*. "After pausing, [the court] read aloud the results of the written poll, concluding that a sufficient number of jurors had concurred in the guilty verdicts on the second count-robbery in the second degree-as to defendants Clark, Vann, Smith, and Lewis." *Id*. The court discharged the jury and set the sentencing date for January 3, 1997. However, at the sentencing hearing, the court informed the defendants that "there was an irregularity in the jury verdict." *Id*. According to the court, a review of the polling slips showed that only eleven jurors had returned slips and only nine agreed on the guilty verdict. *Id*.

¶101. The court stated that it believed that one of the jurors had failed to return her polling slip and that the court had attempted to contact her to make an inquiry as to whether she had turned in a slip and to poll her like all the other jurors. *Id*. The court held a hearing on January 14, 1997, but the juror did not appear, and the defendants moved for a mistrial. *Id*. The court requested written motions and continued that matter until February 5, 1997. *Id*. In the interim, the juror appeared in court on January 24, 1997, and testified under oath about her verdicts. *Id*. at 356. The juror stated that "she did not turn in a polling slip because she was not given a piece of paper." *Id*. The court polled the juror as to her verdicts for the defendants and she stated that she voted with the majority finding all four defendants not guilty on the charge of robbery in the first degree and guilty on the charge of robbery in the second degree. *Id*. At the February 5 hearing, the parties argued their mistrial motions, which the trial court denied. *Id*.

45

¶102. On appeal to the Oregon Court of Appeals, the defendants argued that "the court never received a "complete" verdict as to Vann, Lewis, and Smith on the second-count robbery in the second degree and that after discharging the jury, the court had no authority to even recall one of [the jurors] for questioning." *Id*. at 357. The court of appeals agreed stating that "the court received only 11 polling slips, which accounted for only nine affirmative votes of guilty on the second count as to Vann, Lewis, and Smith. Thus, at that point and as to those counts, the court had not received legally sufficient verdicts." *Id*.

¶103. However, because the trial court took steps to rectify the legally insufficient verdict, the Oregon Court of Appeals' analysis did not end there. The Court stated that although Oregon precedent revealed no case law addressing this issue, the general rule in other jurisdictions was that in criminal cases "a verdict becomes final and unalterable once the jury has dispersed and is no longer under the court's control." *Id*. at 357-58 (citing *United States v. Marinari*, 32 F. 3d 1209, 1213-14 (7th Cir. 1994)). "Once a verdict has been received, and the jury dispersed, the court is foreclosed from any action regarding the verdict, except mistrial or some other post-trial motion." *Id*. at 358 (citing *People v. Davis*, 433 N.E.2d 1376, 1382 (1982)). The Oregon Court of Appeals adopted the general rule of the finality of the verdict when the jury is dispersed because the rule, "like the polling procedure, preserves the integrity of the jury process by ensuring that a jury's verdict is based upon the evidence developed at trial." *Vann*, 973 P.2d at 358.

> Where a jury has left the court's control and been subjected to outside influences, the reliability of any poll on recall, as well as the integrity of the

46

> resulting verdict, is undermined by the possibility, however remote, that the recalled juror was affected by improper influences. That possibility unduly weakens the integrity of the jury process, and the rule outlined above safeguards the system from having to bear that strain.

*Id*. The Oregon Court of Appeals held that when the trial court lost control over the jury, it was foreclosed from reviewing the verdict. *Id*. In addition, the court of appeals found that "[t]he [trial] court abused its discretion in recalling [the juror] in an attempt to correct the verdict, and thus, erred in denying the motion for mistrial of defendants Vann, Smith and Lewis." *Id*.

¶104. It is undisputed that in this case Price's verdicts were recorded and entered after only eleven jurors were polled in agreement. The record shows that the verdicts Price appealed were eleven-person verdicts, which under *Scott* was a nullity. The majority minimizes the significance of this fact, arguing that it resulted from a simple mistake by the circuit court judge. It cites portions of the circuit court's polling in the record and speculates how Bailey was skipped during the initial polling.[19] But how the error occurred is irrelevant to the fact that the circuit court entered verdicts agreed to by only eleven jurors, and the jury was dispersed.

---

[19] The majority speculates that the error occurred because the circuit court did not correct its jury sheet when alternates were seated, which led to her mistakenly calling both Juror 3 and Juror 4, who were no longer seated on the jury during Ross's polling. Even if we can engage in such speculation, this does not explain the circuit court's polling only eleven jurors on Price's verdicts, when there was no confusion like that which occurred during polling on Ross. On Price's verdicts the circuit court correctly called the jurors that were seated and still somehow Bailey was not polled in that instance either.

47

¶105. Further, *Scott* said that an eleven-person verdict was not only null and void, but also incurable. The *Vann* case provides a fuller explanation as to why the null verdict could not be cured by simply recalling a juror after the jury has dispersed. In this case, the verdicts were entered and the jury was dispersed. The missing juror was not polled until twenty months after the verdicts. The possibility that Bailey's vote to convict Price could be the result of improper, outside influences over such a long period of time was hardly remote. Significantly, the record reflects that she met with the State before she was polled in Court and from those conversations, emerged an affidavit that she signed.[20]

¶106. The majority attempts to distinguish *Vann* from this case by concentrating on *Vann's* second holding, namely that the trial court erred when it re-called the juror to try to rectify the illegal verdict. *Ante* at n.12. The majority asserts that the circuit court here did not err because it did not attempt to correct the mistake in the record on its own, but did so pursuant to the order of this Court. However, the majority ignores the first and more critical holding in *Vann*, which is applicable in this case, namely that once a verdict is entered and the jury is dispersed, the verdict becomes final and unalterable. This is wholly consistent with our supreme court's holding in *Scott*.

---

[20] The majority finds that any error from the circuit court's mistake was cured with the affidavit and limited testimony from Bailey at the evidentiary hearing. In the affidavit, Bailey stated that she had in fact participated in all of the deliberations on the guilt or innocence of Price. However, Bailey said this after ex parte communications with the State, which offered no other testimony at the supplemental hearing to corroborate Bailey's testimony. Also, as discussed below, Price was not allowed to question Bailey or present evidence in rebuttal.

48

¶107. The majority also contends that the subsequent polling of Bailey was appropriate under Rules 10(e)-(f) and 14(b) of the Mississippi Rules of Appellate Procedure. However, neither rule authorizes this Court to find that a verdict that was accurately shown to be reached by eleven persons could be remedied by polling a juror some twenty months after a trial.

*A.      Mississippi Rule of Appellate Procedure 10(e) and (f)*

¶108. First, Mississippi Rule of Appellate Procedure Rule 10(e) and (f) authorize a record to be corrected for clerical, not substantive, errors in a transcript. According to Rule 10(e), "if any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth."

¶109. But, in *Mississippi True v. Dzielak*, 293 So. 3d 243, 248-49 (¶13) (Miss. 2020), the Mississippi Supreme Court held that "Rule 10(e) . . . contemplates omission from the appellate record by error, accident, or misstatement." (citing *Russell v. Humphreys Cnty Bd. of Supervisors (In re Validation of Tax Anticipation Note, Series 2014)*, 187 So. 3d 1025, 1031-32 (¶13) (Miss. 2015)). Rule 10(e) is a method for correcting the appellate record to reflect what occurred in the trial court. *Id.*

¶110. Rule 10(e) was never intended to *create* an event that did not happen at trial. Indeed, Rule 10(f) specifically forbids this:

> (f) Limit on Authority to Add to or Subtract From the Record. Nothing in this
> rule shall be construed as empowering the parties or any court to add to or

49

subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of *what transpired in the trial court* with respect to those issues that are the bases of appeal.

(Emphasis added).

¶111. In this case, the apparent error in the record was that only eleven jurors were polled. The record reflects that the twelfth juror, Bailey, was not polled. To determine if the record was correct or whether the court reporter had failed to transcribe Bailey's polling, it may have been appropriate to summon Bailey back to court to determine whether or not she had been polled.[21] However, when it was determined that Bailey was in fact *not* polled and that the record was correct, the authority of Rule 10(e) to "correct the record" ended. The record is accurate and correctly reflects that the verdicts were entered after only eleven persons agreed and after which the jury was dispersed. Under Rule 10(e), the record was accurate and under Rule 10(f), nothing—including Bailey's agreement with the verdicts—should have been added to it. Under *Scott*, the verdicts were null and void and incurable.

## B.    *Mississippi Rule of Appellate Procedure 14(b)*

¶112. Second, Mississippi Rule of Appellate Procedure 14(b) permits remand of a matter for supplemental findings by the *trial* court which are essential to our analysis. *Brink v. State*, 888 So. 2d 437, 445 (¶¶20-21) (Miss. Ct. App. 2004). For example, in *Brink*, at a hearing on his motion to suppress his confession, Brink testified that a deputy promised him

---

[21] It is interesting to note that, when Price found the error on appeal, the State did not first contact the court reporter to compare the transcript to the recording of the proceedings, but instead contacted Bailey directly without permission or supervision from the circuit court.

leniency in exchange for his statement. *Id*. at (¶20). But the deputy never testified as to the voluntariness of the confession in violation of the procedure required in *Agee v. State*, 185 So. 2d 671 (Miss. 1966). *Id*. On appeal, after we reviewed what took place at the suppression hearing, this Court remanded the matter for a new suppression hearing and the deputy's testimony as to the voluntariness of the confession. *Id*. We stated that "[w]ithout this testimony or an adequate reason for its absence, this Court was unable to determine whether or not the lower court correctly decided the question of voluntariness of Brink's statement." *Id*. Therefore, the subsequent remand authorized by Rule 14(b) is for the *trial court* to make the findings of fact it was required to make initially but failed to do so. *See also Brown v. Bond*, 811 So. 2d 238, 240-41 (¶¶12-13) (Miss. Ct. App. 2000) (remanding to the trial court for the judge to make specific findings as to which witness explanation regarding service of process he accepted in ruling that the defendant had been properly served).

¶113. In this case, there was no failure by the *trial court* at the time of trial to make any specific finding of fact, which was necessary to dispose of an issue on appeal. In his initial brief on appeal, Price raised the issue that his verdicts were entered by an eleven-person jury, and the record reflected that only eleven jurors had been polled. We remanded the matter to the trial court to determine whether Bailey had been polled and determine if the record was correct. Pursuant to the Rule 14(b), we agree with the majority that it was within our authority to allow the trial court to question Bailey about whether or not she was polled. The

51

only trial court finding we needed was that the record was correct and that only eleven jurors were in fact polled. Because this was a jury trial, the guilt or innocence of the defendant was not a finding for the trial court to make, and Rule 14(b) has no applicability for the remand of a matter for an incomplete jury verdict.

¶114. The majority uses these two procedural rules to justify our order of remand. Upon further review of the law, I feel we were remiss, not in remanding for clarification of the record, but in further ordering Bailey's post-verdict polling because such action is expressly prohibited under *Scott*. Under these circumstances, Price's conviction must be reversed and he must be afforded a new trial.

## II. Price's due process rights were violated.

¶115. Although Price is entitled to a new trial because his eleven-person verdicts were a nullity, he is also entitled to a new trial because his due process rights were violated.

### A. The Eleven-Person Verdicts

¶116. Verdicts entered with the agreement of only eleven jurors violated Price's due process rights. Going back as far as 1892, the Mississippi Supreme Court has stated that "[t]he constitutional right to trial by 12 men must be secured to every defendant." *Ex parte Scott*, 11 So. 657 (Miss. 1892). In *Fulgham*, the Mississippi Supreme Court stated that "Article 3, Section 31 of the Mississippi Constitution has been interpreted to provide criminal defendants the right to a unanimous jury verdict of twelve impartial jurors." *Fulgham v. State*, 46 So. 3d 315, 324 (¶23) (Miss. 2010). In *James v. State*, 912 So. 2d 940, 951 (¶20)

52

(Miss. 2005), the supreme court reiterated that "[t]he constitutional right to trial by jury includes as its essential elements that the jury shall consist of *twelve* impartial men, neither more nor less, and that the verdict shall be unanimous." *Id*. (emphasis added). *See also Batiste v. State*, 121 So. 3d 808, 840 (¶57) (Miss. 2013) (Mississippi Supreme Court held that "there is a state constitutional right to a unanimous twelve-member jury"). In addition, Rule 18.1 of the Mississippi Rules of Criminal Procedure states that "[i]n felony cases, conviction requires the unanimous consent of twelve (12) impartial jurors." Article 3, Section 14 of the Mississippi Constitution provides that "[n]o person shall be deprived of life, liberty, or property except by due process of law." Because Price had a right to be tried and found guilty by unanimous verdicts by a twelve-person jury, he could not be deprived of that right without due process. In this case, the eleven-person verdicts violated Price's due process rights.

### B. Denial of the Right to Question Juror Bailey Regarding Her Presence

¶117. In addition, Price was deprived of his due process right to question Bailey at the supplemental hearing. What happened in the *James* case is instructive here. In *James*, the defendant had been accused of murdering a child. *James*, 912 So. 2d at 943 (¶4). The day after the jury reached the guilty verdict, the defense counsel was contacted regarding the jury's exposure to extraneous information. *Id*. at 944 (¶7). After a "Notice of Jury Exposure to Extraneous Information" was filed, a hearing was held. *Id*. The trial court heard limited testimony regarding the extraneous information, which was basically that James had been

53

accused of murdering another child at a different time. *Id*. at 944-45 (¶¶7-8). The defense counsel requested that the entire jury be brought in to be examined further about this extraneous information and the trial court denied the request. *Id*. at 945 (¶10). "The trial court later denied James's other post-trial motions and James filed a notice of appeal." *Id*.

¶118. On appeal, this Court instructed the trial court to conduct a hearing as the defense requested. *Id*. at (¶11). However, by the time the hearing was conducted, it was then five years later and only eleven of the jurors could be located. *Id*. at 946 (¶¶13-14).[22] The trial court questioned each of the eleven jurors individually about whether they had been "informed or made aware from any source that [James] had been accused of killing another child." *Id*. at 946 (¶14). "The trial court refused to allow the attorneys to question the jurors." *Id*. at 949 (¶15). After hearing closing arguments from the attorneys, the trial court determined that "extraneous information had been communicated to the jury." *Id*. Despite this determination, the trial court found that the communication was incidental and did not require impeachment of the jury verdict. Therefore, the trial court affirmed James's conviction. *Id*. James appealed again and this Court affirmed the conviction. *Id*. at (¶16).

---

[22] On James's initial appeal, this court reversed the trial court and remanded the matter for further proceedings. *James*, 912 So. 2d at 945 (¶11). The State then filed a motion for rehearing with the Court of Appeals, to which James responded in opposition. *Id*. The Court of Appeals denied the State's motion, withdrew its original opinion, and substituted a modified opinion. *Id*. at (¶12). "Both the State and James filed petitions for writ of certiorari." *Id*. at 946 (¶12). The supreme court denied both petitions, and the case was remanded to the trial court to reconvene and question the jurors about their exposure to any extraneous information. *Id*. at (¶¶12-13).

However, the Mississippi Supreme Court granted certiorari and ultimately found that James should be granted a new trial for two reasons: (1) because the trial court failed to reconvene the full jury and (2) because it was reasonably possible that improper information had affected the jury. *Id*. at 952 (¶22). In addition, the supreme court stated that the trial court erred when it refused to allow the attorneys to examine the jurors during the second hearing. *Id*. at 953 (¶28). The court stated that "the breadth of questioning should be sufficient to permit the entire picture to be explored." *Id*.

¶119. In this case, Bailey was not polled during the polling for either defendant. An error like this, which in itself is highly unusual, does not happen twice in the same proceedings. This raises a factual issue that needed to be resolved: was juror Bailey really present at the time of the deliberations and verdicts? To be resolved, this factual issue needs to be fully explored and not just decided on an ex parte affidavit secured by the State and limited questioning of Bailey by the trial court alone. In my opinion, at the remand hearing, Price's attorney should have been allowed to question Bailey on whether she was actually present and why she was not polled if she was present. Indeed, the State obviously spoke with Bailey even before the supplemental hearing. *It is patently unfair for the State to object to Price being allowed to do what the State had already done, unilaterally and without permission or supervision by the court.* Without being able to question Bailey, Price could not explore

Bailey's presence at the time of the verdicts.[23] Nor was Price able to question Bailey about the extent of her communication with the State prior to the hearing or during the preparation of the affidavit, which was part of the record and signed fifteen months after the trial. For these reasons, Price was deprived his due process right to question Bailey. The majority would require Price to submit an affidavit of "prejudice" before consideration of his claim. However, even prior to the filing of its motion with this Court, the State had communicated ex parte with Bailey and actually polled her! The majority asserts that Price failed to present evidence or an affidavit in support of his claim that Bailey was not present for the jury deliberation or verdicts. *Ante* at n.13. However, Price was prepared to present such testimony at the supplemental hearing and was barred from doing so. Price had no time to secure and file an affidavit. In addition, Price made a proffer of the testimony that he would have presented at the hearing had he been allowed to do so.

¶120. The majority contends that the circuit court properly denied any line of questioning prohibited by Mississippi Rule of Evidence 606(b). However, Rule 606(b) was designed to prohibit the post-trial questioning of jurors about statements made or incidents that occurred during deliberations as well as a juror's mental process in reaching their verdict. Rule 606(b)'s prohibition was implemented to protect "the jury's ability to candidly discuss issues [during deliberations] free from the fear that they will be called to justify their decision."

---

[23] The requested questioning was not for the purpose of impeachment of the verdicts, but to explore whether Bailey was there to render the verdicts.

*Mariner Health Care Inc. v. Est. of Edwards ex rel. Turner*, 964 So. 2d 1138, 1146 (¶14) (Miss. 2007). In this case, Price was not seeking to question Bailey about how the jury reached its verdict decision but instead whether or not Bailey was present during the proceeding. In addition, Price should have also been allowed to question Bailey regarding her ex parte communication with the State that resulted in the affidavit. Such questioning would be authorized under Rule 606(b)(2)(B), which allows a juror to testify about any outside influence that was improperly brought to bear on their verdict.

### C. Denial of the Due Process Right to Present Evidence

¶121. At the supplemental hearing, the circuit court would not let Price present any witnesses or evidence to rebut Bailey's testimony. Price's attorney made a proffer that Price had witnesses who would have testified that Bailey was not present during deliberations and was not available to be polled. Specifically, Price's attorney stated, "We would have been able to prove that or at least call a witness or two to contest what she said. She was not present when the jury was polled. She did not vote in his guilt or innocence." Price's attorney also stated that Price was going to testify that Bailey was not present during the deliberations or during the polling of the jury.

¶122. When limiting evidence, the trial court is duty-bound to weigh the interests served against the defendant's constitutional right to present his defense. *Johnson v. State*, 311 So. 3d 1161, 1172 (¶ 20) (Miss. Ct. App. 2020) (citing *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). "As a result, trial courts in this State must "insure the constitutional right of the

accused to present a full defense in his or her case." *Johnson*, 311 So. 3d at 1172 (¶20) (citing *Ross v. State*, 954 So. 2d 968, 996 (¶56) (Miss. 2007)). In *Mohamed v. State*, 323 So. 3d 532, 543 (¶26) (Miss. Ct. App. 2021), *reh'g denied* (Aug. 3, 2021), this Court stated that "we recognize that "a defendant has a constitutional right to call witnesses in his or her favor." The supplemental hearing we ordered was a critical stage in the proceedings that would result in Price serving life plus in jail. He should have been allowed to present whatever evidence he had to impeach or rebut Bailey's testimony. Precluding him from doing so violated his constitutional due process right to present evidence.

¶123. The majority faults Price for not submitting any evidence or affidavits to support his claims but clearly Price was denied the opportunity to do so. This is not a claim for post-conviction collateral relief; this was a hearing in which Price's counsel came prepared to place witnesses on the stand and to present evidence but again was denied the right to do so.

### III. Improper ex parte communication by the State tainted Bailey's post-trial polling.

¶124. The record also shows that prior to being polled at the supplemental hearing, the State contacted and spoke to Bailey. After speaking with her, the State fashioned an affidavit for her to sign, which it attached to its motion to this Court. In these circumstances, this constituted prohibited communication with a juror.

¶125. Under the Mississippi Rules of Evidence, "the trial court must supervise any post-trial investigation to ensure that jurors are protected from harassment and to guard against inquiry into subjects beyond which a juror is competent to testify." Mississippi Rule of Evidence

606(b) comment.

¶126. In *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407 (Miss. 1993), a civil suit was filed in the Panola County Circuit Court after Gladney and Sossaman were killed when their automobile collided with a truck owned by Clarksdale Beverage Company, Inc. (Clarksdale Beverage). *Id*. at 409. A three day jury trial was held on the matter, and the jury returned a verdict in favor of Clarksdale Beverage. *Id*. at 410. "Thereafter, both the Sossaman and Gladney Estates filed motions for J.N.O.V. or in the alternative for [a] new trial." *Id*. Prior to filing their motions, the estates secured juror affidavits, which stated that on the night before deliberations, a juror that "lived close to the accident scene and had gone through the intersection." *Id*. at 414. Thus, in their motions, both estates alleged that "the jury had been improperly influenced by extraneous prejudicial evidence" and attached the juror affidavits previously obtained to their motions. *Id*. Clarksdale Beverage moved to strike the affidavits of the jurors, and the circuit court granted its motion. *Id*. The court also denied the estates' motions for a J.N.O.V., or a new trial stating the following:

> Counsel for the losing plaintiffs completely ignored a long line of cases and a complete body of case law, which this trial judge will not try to recite all the cases in covering the issue of whether or not, number one, the attorneys had the right to use the procedures they used, that is bring jurors into their office in the presence of a court reporter without any notice to counsel opposite or the court for any special instructions or procedure and taking a sworn statement and then expecting this court to rely upon the sworn statements and set aside a jury verdict that was justified by the evidence in the case.

On appeal, the Mississippi Supreme Court concluded "that there was no abuse of discretion on the part of the circuit court in striking the affidavits" *id*. at 415, because "the prerequisite

showing under M.R.E. 606(b) for juror testimony was not met." *Id*. at 419. In affirming the circuit court's decision to strike the juror affidavits, and to prevent further confusion, the supreme court outlined and established the proper "method to uniformly execute juror inquiry, under M.R.E. Rule 606(b), within this state." *Id*.

¶127. The supreme court stated that "[a]s a beginning to this inquiry, the trial court and opposing counsel must be made aware of any potential juror misconduct when this evidence is manifested. *Id*. at 418. The supreme court further stated that once an allegation of juror misconduct arises, then the next step for the court is to determine whether an investigation is warranted. *Id*. "Juror polling shall only be permitted by an attorney, outside the supervision of the court, upon written request." *Id*. at 419. In addition, an investigation is only permitted if the court determines that "there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information." *Id*.

> The trial court has the inherent power and duty to supervise these post-trial investigations to ensure that jurors are protected from harassment and to guard against inquiry into subjects beyond which a juror is competent to testify under M.R.E. 606(b). The trial court's supervision is warranted to protect the interest of the parties and jurors. Inquiry is allowable outside the presence of the trial court, upon written request and trial court permission, yet when the trial court determines that either the likelihood of juror harassment is evident *or inquiry into a range of information beyond which testimony is permitted under Rule 606(b) is subject to occur, the inquiry should be interwoven with the trial judge's supervision.*

*Id*. (emphasis added).

¶128. More recently, in *Batiste v. State*, 337 So. 3d 1013 (Miss. 2022) (*Batiste II*), the issue

of the impropriety of securing juror affidavits, without the court's supervision, arose again. In *Batiste,* the Mississippi Supreme Court granted Batiste permission to file a PCR petition after determining that Batiste "was entitled to a hearing regarding alleged communications between bailiffs and/or others and members of the jury." *Id*. at 1016 (¶1). Prior to the hearing on Batiste's petition, Batiste's counsel unilaterally obtained affidavits from jurors regarding alleged comments a bailiff made concerning the racial composition of the jury at Batiste's trial. *See Batiste v. State*, 184 So. 3d 290, 291 (¶2) (Miss. 2016) (*Batiste I*).[24] At the hearing, the jurors testified that "once it became apparent that the jury was all white[,] a couple of them expressed concern about the jury's racial composition." *Id*. at 1018 (¶8). Ultimately, the circuit court denied Batiste's PCR petition and discussed the *Gladney* procedure for post-trial jury communication in detail, and found that the *Gladney* procedure had been violated. *Id*. at 1019 (¶10). The circuit court stated that the counsel's contact with the jurors "occurred without permission from the circuit court and that no evidence suggested the Attorney General's office was given notice of the intent to interview [the jurors]." *Id*. at 1024 (¶27). The circuit court also stated that "the testimony of [the jurors] was improper due to the illegally obtained affidavits . . . ." *Id*. at 1019 (¶10). Thus, because of counsel's prohibited conduct, the circuit court found that Batiste was left "with no competent evidence

---

[24] In *Batiste II*, 337 So. 3d at 1016 n.1, the supreme court noted that "[t]he information in the affidavits on which the claims for relief were made was obtained in violation of the requirements of *Gladney*, . . . and its progeny." *Id*. The court further stated it had not been aware of these violations when it handed down *Batiste I*.

for the court to consider in reviewing his petition." *Id*.

¶129. On appeal, the Mississippi Supreme Court upheld the circuit court's ruling that "[i]t is clear that the Office of Capital Post-Conviction Counsel failed, and apparently did not even attempt, to follow the appropriate method for post-verdict juror inquiry as laid out by this Court in *Gladney* and its progeny." *Id*. at 1025 (¶33). The supreme court highlighted the fact that counsel for Batiste "never notified the Court of any evidence to support a belief that any juror in this case was subject to improper outside influence or received prejudicial information [during] the pendency of the trial." *Id*. at (¶34). The court further stated that "[p]rior to their unlawful out of court polling" of the jurors, counsel failed to make any showing required by *Gladney* to seek its interviews of the jurors. *Id*. Thus, the supreme court held that Batiste's interviews of the jurors were improper and unlawfully collected, and their use was prohibited in the matter. *Id*. The court further stated that the jurors' testimony at the PCR hearing was "unlawful because Batiste used unlawfully obtained affidavits to justify the subpoenas of [the jurors]." *Id*.

¶130. In this case, the State clearly violated Rule 606(b) and the procedure outlined in *Gladney* by prematurely contacting Bailey and acquiring an affidavit from her without the permission or supervision of the court. Pursuant to *Gladney* and *Batiste*, when Price argued that the record showed that he was convicted by a jury of only eleven persons, it was appropriate for the State to request that the matter be remanded and for the record to be clarified. However, the State's ex parte communication and premature polling of Bailey,

62

*before it obtained permission from this court and without notice to Price*, was a violation of

*Gladney* and Rule 606(b).[25]

¶131. The majority erroneously holds that the State's premature polling of a juror does not

violate Rule 606(b), citing *Martin v. State*, 732 So. 2d 847 (Miss. 1998). However, in

*Martin*, jurors had contacted the defendant's defense attorney to tell him that the verdict

reported on one of the counts against Martin was not their verdict. *Id*. at 848 (¶3). The State

---

[25] The majority attempts to distinguish *Gladney* and *Batiste* asserting that "the specific facts before us are not the type of communication or jury inquiry prohibited by Mississippi Rule of Evidence 606(b)." *Ante* at n.14. Rule 606(b)(1) specifically states that "[d]uring an inquiry into the validity of a verdict . . . a juror may not testify about any . . . incident that occurred during the jury's deliberations." Therefore, Bailey's presence or absence during the deliberations is clearly an incident within the parameters of Rule 606(b). In addition, Bailey's potential absence from deliberations certainly would also constitute juror misconduct to which the procedure in *Gladney* would apply.

The majority cites *Robles v. Exxon Corp.*, 862 F.2d 1201, 1207 (5th Cir. 1989), for the proposition that a juror can testify that the verdict reached was her true verdict. However, *Robles* involved a juror's testimony *before the court* not a party's independent ex parte communication with a juror post-verdict as occurred here. For the State to approach Bailey and poll her unilaterally, and without the court's supervision, before anyone knew whether she did in fact agree with the verdicts rendered at trial, was wholly improper and prohibited. Thus, Rule 606(b) does apply to the facts at hand and the State should have followed the procedure outlined in *Gladney* and *Batiste*. *Robles* only confirms what this court has already said: a juror can testify about the accuracy of their verdict in court, *but not in an unsupervised ex parte communication with one of the parties.*

As it stands, the majority's ruling would allow an attorney to approach any juror post-verdict unsupervised to inquire into their verdict rendered at a trial, raising the specter of undue influence. This clearly violates the public policy interest outlined in the comments to Rule 606(b), namely "[t]his broad rule of exclusion ensures jurors freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." *See also Gladney*, 625 So. 2d at 418 ("[A] balance must be struck between the right to inquire into the jury verdict and the right of each juror to be *free from harassment and secure in their verdict.*").

63

did not challenge the affidavits that Martin's attorney attached to his motion for a new trial, but only argued that under Rule 606(b), the jury could not impeach their prior verdict. *Id*. at 850 (¶13). In this case, when faced with the prospect of invalid verdicts, the State sought out juror Bailey and unilaterally, without permission from this court and without notice to Price, polled her to determine her verdicts. The facts in *Martin* are clearly distinguishable from the facts here.

¶132. In addition, as the Mississippi Supreme Court held in *Batiste*, because of the State's premature and unlawful polling, Bailey's testimony at the supplemental hearing was tainted and unreliable, especially when Price was denied the opportunity to cross-examine her. We also note that at the hearing, the State objected to the attempt by Price's attorney to question Bailey regarding her actual presence during the jury deliberations and verdicts. The circuit court sustained the State's objection, erroneously condoning the State's prohibited pre-hearing actions.

¶133. As discussed above, it is my opinion that the State's prohibited premature polling of Bailey violated Rule 606(b). In addition, the subsequent polling of Bailey at the supplemental hearing was tainted and unreliable given the State's prohibited prior ex parte communication with her. Accordingly, Bailey's polling at the supplemental hearing twenty months after the trial did not cure the eleven-person verdicts.

**CONCLUSION**

¶134. Years ago, the Mississippi Supreme Court captured the essence of justice administered

64

by our jury system and the issues in this case, saying:

> The legal theory of a trial by jury is the selection of an impartial body from the county, and its trial of the case free from any influence except that produced by the testimony and law and legitimate argument, and any subjection of the jury to any other influence is carefully guarded against. Twelve men must concur in preferring a charge of felony before one can be held to answer; and twelve men, elected, impaneled, and sworn to try the issue joined, must concur in a verdict of guilty before the humblest can by our law be deprived of his liberty; and such is the jealousy with which trial by jury is guarded that, when it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused will be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law, and every one is to be judged by the law.

*Lamar v. State*, 64 Miss. 687, 692, 2 So. 12, 14 (Miss. 1887). It is clear that there are several issues in this case that indicate that Price's guilt was not ascertained in a manner prescribed by law. Based on the record, Price's eleven-person verdicts were null and void, requiring a reversal of his convictions and a new trial. That null and void verdicts were not curable, certainly not when a missing juror was polled some twenty months after the trial in a proceeding where Price was denied his constitutional right to question the juror and present evidence to impeach or rebut her testimony. In addition, Price's due process rights were also violated when he was deprived of his liberty after only the eleven-person verdicts and when he was not allowed to cross-examine juror Bailey regarding her presence during polling or allowed to present evidence to refute Bailey's assertion that she was in fact present. Moreover, the State's ex parte communication and polling of Bailey concerning her vote, without permission from this court and without notice to Price, violated Rule 606(b) and the

Mississippi Supreme Court's procedure as outlined in *Gladney* and *Batiste*. For these reasons, Price should be afforded a new trial and given the opportunity to be heard and judged by an impartial, twelve-person jury.

**WESTBROOKS, J., JOINS THIS OPINION. McCARTY, J., JOINS IN PARTS I AND II OF THIS OPINION.**